CATALANOTTO *v.* CONEY ISLAND & B. R. Co.

(*City Court of Brooklyn, General Term.* November 25, 1889.)

NEGLIGENCE—EVIDENCE—VERDICT.

In an action for personal injury to plaintiff while riding in one of defendant's horse-cars, it appeared that, as the car was passing over a draw-bridge, a key and pole, weighing about 300 pounds, fell, one end of the pole projecting about three feet into the car, and causing the injury. The pole and key, when not used for operating the draw-bridge, were hung up on two railroad spikes, driven in a slant into the trestle-work near the track. The evidence was conflicting, but tended to show that the undue rate of speed of the car caused the bridge to oscillate, and dislodge the key and pole. The driver testified that he "was always afraid of an accident,—was always afraid it would fall;" and that he knew, if he "went over on a trot, it would shake the bridge," and "the faster you go the more it will shake the bridge." *Held,* that a case was made calling for submission to the jury of the question of the negligence of defendant's driver.

Appeal from special term.

Action to recover damages for personal injury, by Christopher Catalanotto against the Coney Island & Brooklyn Railroad Company. On trial by jury, a verdict was returned for plaintiff; and from the judgment entered thereon, and the order denying a motion for a new trial, defendant appeals.

Argued before OSBORNE and VAN WYCK, JJ.

*Bergen & Dykman,* for appellant.   *Thos. E. Pearsall,* for respondent.

OSBORNE, J.  On December 14, 1888, plaintiff was a passenger in one of defendant's horse-cars; being seated at the front end of the car, on the right-hand side. The route of the car was over the Ninth-Street bridge crossing Gowanus canal. This bridge is a draw-bridge, about one hundred feet long, having passage-ways in the center for cars and other vehicles, with footways at each side, which are separated from the carriage-way by trestle-work. An iron key is used for opening the bridge, which is fastened on a pole about sixteen feet long, about four inches thick in the center, and tapering at each end to about one and a half inches; the key and pole weighing, together, between two and three hundred pounds. When not in use, this key and pole are placed or hung up on two ordinary railroad spikes driven into the trestle-work above mentioned, and along-side the car track. The spikes are driven in on a slant, and project about three inches from the trestle-work. As defendant's driver was driving the car across the bridge, the key and pole fell, and one end of the pole was forced about three feet into the car, through two panels, each five-eighths of an inch thick, striking the plaintiff, breaking one of his ribs,

and otherwise bruising him. Plaintiff brought this action to recover damages for the injuries so received, and obtained a verdict of $1,000. From the judgment entered thereon, and the order denying a motion for a new trial, this appeal is taken.

Plaintiff's claim is that the driver of the car was crossing the bridge at an undue rate of speed, that such undue speed caused the bridge to oscillate more rapidly than it would otherwise, that the key and pole were dislodged by such rapid oscillation, and that the accident was caused by the negligence of defendant's driver. The evidence was somewhat conflicting as to the rate of speed at which the driver was going in crossing the bridge. That the driver was called upon to exercise care in crossing this bridge is plainly evident from his own testimony. On his cross-examination, he testified: "I knew that, if I went over the bridge on a trot, it would shake the bridge. * * * The faster you go, the more it will shake the bridge;" and again he testified as follows: "*Question.* Was you afraid? *Answer.* I was always afraid of accident,—always afraid it [referring to the key] would fall. I thought it was dangerous. If it should fall, it would make a bad accident." Again, on his redirect examination, he testified: "*Question.* Now, wasn't that [referring to the time of the accident] the first time that your fears of this key falling were aroused? *Answer.* My fears was always of an accident crossing any bridge,—crossing the bridge. *The Court.* Well, as to the key falling down is the question. Well, the key is the same thing. It belongs to the bridge." Defendant proved that the oscillation of the bridge did not exceed half an inch, regardless of the rate of speed at which a car or vehicle was driven. It also offered evidence going to show that no similar accident ever happened before; and the learned counsel for the defendant contends that this was one of that class of accidents which defendant could not have foreseen or guarded against, and that, as it had no charge or control of the key, it was not responsible if the key had beeen insecurely hung. We are of the opinion, however, that a case was made, calling for the submission to the jury of the question as to negligence of the defendant's driver. There was some evidence of undue speed in crossing the bridge. There was the further fact that the pole was driven three feet into the car, through two five-eighths inch panels, and was so firmly lodged there that, in order to remove it, the horses had to be hitched to the rear of the car, and the car started, some men holding on to the other end of the pole, before it could be dislodged, as some indication of the speed at which the car was moving, and the apprehension of the driver, above quoted, as to the danger and risk of accident from this pole. In the charge of the learned trial judge the question of the negligence of the driver, as affecting the liability of the defendant, was squarely put before the jury to decide. He charged as follows: "If this driver, Miller, was negligent or careless, then the company is liable. If he was not careless, if he did all that he could do, exercised ordinary care to avoid injury to the plaintiff, then the company is not liable." Under the law as thus laid down, the jury have found against the defendant. There is evidence to sustain their finding, and we do not think the verdict should be disturbed. We have carefully examined the exceptions to the requests to charge as presented by the learned counsel for the defendant, and we fail to find any error in the refusals. Some of them contain propositions of law that are unquestionably sound, but they do not apply to this case as presented on the evidence.

In our minds the salient point is that defendant's driver, whose route lay across this bridge, and who was familiar with it, and with the manner in which the key was suspended, showed himself cognizant of the fact that there was a lurking danger from this key while crossing this bridge. That fact imposed upon him the duty to be careful and vigilant in guarding against accident. The jury have found by their verdict that he was negligent, and the defendant cannot shield itself from its liability for such absence

of care and vigilance by any assumption that the key was securely hung, or that, because an accident of a similar character had never occurred before, it was relieved from its duty. For the reasons above stated we think that the judgment and order appealed from should be affirmed. Judgment and order denying motion for a new trial affirmed, with costs.